The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Alexander STANLEY, Defendant–
Appellant.

No. 00CA1164.

Colorado Court of Appeals,
Div. I.

Sept. 12, 2002.

Ken Salazar, Attorney General, Catherine P. Adkisson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge WEBB.

Defendant, Alexander Stanley, appeals his judgment of conviction entered on jury verdicts finding him guilty of second degree assault and resisting arrest. He also appeals the trial court's order denying his Crim. P. 35(c) motion without a hearing. We reverse the judgment and remand the case for a new trial on the second degree assault charge.

After sentencing defendant to a lengthy term of incarceration in an unrelated criminal matter, the court recessed, leaving defendant seated at counsel table with his legs shackled. Two deputy sheriffs, an Arapahoe County district attorney investigator, a law clerk, and a court reporter were also in the courtroom.

The deputies allowed defendant a few minutes to compose himself. However, when a deputy approached defendant to return him to jail, defendant stood up, flipped over the defense table, and threw several chairs, one of which was deflected by the investigator. A third deputy entered the courtroom and pepper sprayed defendant, who then calmed down and was taken to jail.

Defendant was charged with felony criminal mischief, second degree assault against a peace officer (the investigator), and resisting arrest.

The trial court appointed counsel, who soon moved to withdraw citing irreconcilable differences with defendant. The court granted the motion to withdraw, continued the trial date, and informed defendant that it would appoint new counsel.

Defendant responded that he wished to proceed pro se and possibly obtain advisory counsel later. As the court began to question him about his request, defendant said that he was in pain from an assault by jail officers. The court then adjourned the hearing so that defendant could receive medical attention, noting that it would appoint new counsel, but also would consider defendant's request for advisory counsel.

When defendant appeared three days later, the trial court appointed advisory counsel and allowed defendant to proceed pro se. The court neither questioned him further nor explained why it had not appointed new counsel for him.

When the jury trial began, defendant represented himself, but repeatedly complained that he was not prepared because of difficulties communicating with advisory counsel and interference by Department of Corrections (DOC) officers. However, advisory counsel was present throughout the trial.

Defendant conducted voir dire, made an opening statement, and cross-examined witnesses. At the close of the evidence, the trial court granted defendant's motion for judgment of acquittal on the felony criminal mischief count, but denied his motion as to the other two counts, on which the jury returned guilty verdicts.

The trial court sentenced defendant to imprisonment in DOC for six years on the assault count, to run consecutive to his sentence from the separate criminal case, and to three months in the county jail on the resisting arrest count, to be served consecutively to the sentence from the other case but concurrently with the assault sentence.

At the end of the sentencing hearing, defendant filed a motion to vacate or set aside the conviction under Crim. P. 35(c), which the trial court denied without conducting a hearing. This appeal followed.

I.

Defendant first contends the trial court erred by not advising him adequately of his right to counsel under the Sixth Amendment. Therefore, he argues, his pur-

ported waiver of this right was invalid. We agree.

■ The Sixth Amendment to the United States Constitution guarantees the right to counsel, which is essential to a fair trial. *See also* Colo. Const. art. II, § 16. As a corollary to this right, a defendant has the right to self-representation. However, before being allowed to proceed pro se, a defendant must make a knowing and intelligent waiver of the right to counsel. *People v. Arguello,* 772 P.2d 87 (Colo.1989). Although a defendant need not have the skill and experience of a lawyer, the defendant must be aware of the dangers and disadvantages of self-representation. *Reliford v. People,* 195 Colo. 549, 552, 579 P.2d 1145, 1147 (1978).

■ A waiver may be an express statement by the defendant to relinquish the benefits of counsel, or it may be implied from the circumstances of the case. An implied waiver has been described as a forfeiture of the right to counsel, rather than a deliberate and informed decision to waive that right. *People v. Arguello, supra.*

■ Whether an asserted waiver is express or implied, courts indulge every reasonable presumption against it, and the People bear the burden of demonstrating that the waiver was knowingly, intelligently, and voluntarily made. *King v. People,* 728 P.2d 1264 (Colo.1986). If the People establish a prima facie case that the waiver was valid, then the defendant may overcome it by presenting evidence from which it could reasonably be inferred that the waiver was not knowing, voluntary, and intentional. *People v. Arguello, supra.*

■ A waiver cannot be knowing and intelligent unless the record clearly establishes that the defendant understands: the nature of the charges; the statutory offenses included within them; the range of allowable punishments; possible defenses to the charges and circumstances in mitigation; all of the facts essential to a broad understanding of the whole matter; and the requirement of complying with the rules of procedure at trial. *People v. Arguello, supra.*

■ In this regard, the *Colorado Trial Judge's Benchbook* lists questions that a trial court should ask every defendant who seeks to proceed pro se, including whether: the defendant understands the right to counsel; the defendant understands that if he or she cannot afford an attorney, one will be appointed; the defendant understands the charges and possible penalties; the defendant has any legal training; the defendant is educated; the defendant is under the influence of any drug, medication, or alcohol that would affect his or her understanding; the defendant wishes to consult with the public defender before making a decision to waive counsel; the defendant understands the complexity of criminal law; the defendant understands the right to remain silent; the defendant requests advisory counsel; the defendant understands the risks involved in self-representation; the defendant understands his or her rights of confrontation and cross-examination; and the defendant understands that he or she has the right to compel witnesses to appear and testify. *People v. Arguello, supra.*

■ Whether a waiver of the right to counsel is knowing and intelligent presents a mixed question of law and fact that we review de novo. *United States v. Cash,* 47 F.3d 1083 (11th Cir.1995). On appeal, the reviewing court must not only look at the advisement, but also weigh the totality of the circumstances in ascertaining the validity of the waiver. *People v. Arguello, supra.*

### A.

Initially, we consider whether the trial court adequately ascertained that defendant knowingly, intelligently, and voluntarily decided to represent himself. We conclude that it did not.

■ When defendant first indicated to the trial court that he wished to proceed pro se, the court inquired only whether defendant had any experience in criminal matters, to which defendant answered "no," and whether defendant thought himself competent to select jurors, to which he responded that he believed he was. However, a defendant's statement that he is aware of the right

to counsel and desires to waive the right does not automatically end the court's responsibility. *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

Here, the trial court's questioning was interrupted by defendant's complaint of being in pain. However, defendant was neither disruptive nor discourteous. *Cf. People v. Smith,* 881 P.2d 385 (Colo.App.1994)(court considered fact that defendant's misbehavior precluded a complete advisement). Nevertheless, the court then made no further inquiry. Three days later, defendant entered his appearance pro se without discussion or advisement.

■ In our view, defendant's express waiver was invalid because the trial court's inquiries were not adequate to establish that defendant was aware of the dangers and disadvantages of self-representation. *See People v. Smith, supra.* However, a court's failure substantially to comply with this requirement does not alone preclude a valid implied waiver. *People v. Arguello, supra.*

### B.

The People argue that defendant's overall course of conduct shows an unequivocal intent to give up his right to counsel and thus constitutes an implied waiver. We are not persuaded.

■ Where the advisement has been found deficient, courts rarely recognize an implied waiver. *People v. Arguello, supra.* To conclude that a defendant impliedly waived the right to counsel, the record as a whole, including the reasons proffered by the defendant for not wanting counsel, together with his or her background, experience, and conduct, must establish that the defendant knowingly and voluntarily undertook a course of conduct which shows an unequivocal intent to abandon legal representation. *King v. People, supra.*

Here, the record does not explain either why defendant sought to represent himself or on what basis the trial court allowed him to do so. Although defendant proceeded to trial pro se without expressing concern over lack of representation, the trial court neither urged him to reconsider, as in *People v.*

*Mossmann,* 17 P.3d 165 (Colo.App.2000), nor renewed its offer to appoint counsel, as in *People v. Smith, supra.*

The record does not show that defendant had any prior criminal trial experience. Contrary to the People's characterization of the proceedings, defendant made serious tactical mistakes, including failure to disclose witnesses timely, failure to request an instruction on the proper lesser included offense, and failure to attack an element of the assault charge, namely, his knowledge that the investigator was a law enforcement officer. *Cf. People v. Smith, supra,* 881 P.2d at 389 (in finding an implied waiver, trial court noted that "defendant had done a very commendable job in representing himself").

Thus, under the totality of the circumstances, we conclude that defendant did not impliedly waive his right to counsel.

Therefore, defendant's convictions must be reversed.

### II.

■ Defendant further contends the evidence was insufficient to prove beyond a reasonable doubt that he resisted arrest. Because resolution of this issue could bar a retrial, we address it, and we conclude that the evidence was insufficient.

■ When sufficiency of the evidence is challenged on appeal, the appellate court must determine whether the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. *People v. Miralda,* 981 P.2d 676 (Colo.App.1999).

The People do not contest that leg shackles bound defendant when he allegedly resisted arrest. Defendant argues that he was already in custody, and therefore the People could not establish that he attempted to prevent a police officer from effecting his arrest. We agree.

Section 18–8–103(1), C.R.S.2001, provides: A person commits resisting arrest if he knowingly prevents or attempts to prevent a peace officer, acting under color of his official authority, from effecting an arrest of the actor or another, by:

(a) Using or threatening to use physical force or violence against the peace officer or another; or

(b) Using any other means which creates a substantial risk of causing bodily injury to the peace officer or another.

Section 18–3–203(1)(f), C.R.S.2001, provides in pertinent part that a person commits second degree assault if "[w]hile lawfully confined or in custody, he or she knowingly and violently applies physical force against the person of a peace officer ... engaged in the performance of his or her duties."

In *People v. Armstrong*, 720 P.2d 165 (Colo.1986), the supreme court explained that an arrest must precede the person being "in custody" for purposes of § 18–3–203(1)(f). Hence, when a defendant is charged with resisting arrest and second degree assault, both statutes could be violated only if the defendant's conduct began before the arrest and resumed after it.

■ Thus, a person using violence against a peace officer to avoid arrest commits the crime of resisting arrest up to the point of arrest. However, after the arrest has been effected, a person then in custody who uses violence against a peace officer commits second degree assault. Accordingly, "[t]he two crimes are mutually exclusive, and whether the defendant's use of force precedes or follows the effectuation of the arrest dictates the nature of the offense." *People v. Thornton*, 929 P.2d 729, 733 (Colo. 1996).

Nevertheless, relying on *People v. Denison*, 918 P.2d 1114 (Colo.1996), the People argue that here defendant was in custody for the unrelated criminal case, not because of his new misbehavior, and therefore the deputies were attempting to arrest him for a different crime. We do not agree.

*People v. Denison, supra,* addressed whether an inmate incarcerated for one offense, who is questioned about a separate offense allegedly committed while he was incarcerated, is "in custody" for purposes of being entitled to a *Miranda* advisement. We read *Denison* as deciding only that, although in custody, the inmate was not separately restricted by the questioning for *Miranda* purposes on the particular facts presented.

■ An arrest occurs when, in view of all the circumstances, a reasonable person would believe that he or she is not free to leave. *People v. Pancoast*, 659 P.2d 1348 (Colo. 1982). "Custody" means "the restraint of a person's freedom in any significant way." Section 16–1–104(9), C.R.S.2001. Thus, at the time of his outburst, defendant was already both in custody and under arrest.

Accordingly, we conclude that he could not be placed under arrest for the new crimes and, therefore, could not have resisted arrest. On remand, the trial court must dismiss this charge.

### III.

Based on our decision to reverse and remand for a new trial, the remaining issues raised by defendant, including those concerning the order denying his Crim. P. 35(c) motion, are moot, and we decline to address them.

The judgment is reversed, and the case is remanded to the trial court for dismissal of the resisting arrest charge and a new trial on the second degree assault charge consistent with the views expressed in this opinion.

Judge METZGER and Judge CASEBOLT concur.