FOURTH DIVISION

JUNE 27, 2002

1-99-2845

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Respondent-Appellee, ) Cook County.

)

v. ) 

)

DANNY GHOLSTON, ) Honorable

) Catherine M. Haberkorn,

Petitioner-Appellant. ) Judge Presiding.

JUSTICE HARTMAN delivered the opinion of the court:

Petitioner, Danny Gholston, appeals from the dismissal of his post-conviction petition.  
Petitioner was one of nine men who attacked a 15 year-old-girl and her two male friends on an elevated train platform as they waited for a train on December 27, 1980.  Following a jury trial, petitioner was convicted in 1981, of rape, deviate sexual assault, indecent liberties with a child, and aggravated battery against the girl; and robbery, aggravated battery, and conspiracy to commit robbery against the two boys.  Petitioner was sentenced to the following concurrent extended term sentences:  (1) 50 years for rape; (2) 50 years for deviate sexual assault; (3) 25 years for indecent liberties with a child; (4) 10 years for robbery; and (5) eight years for aggravated battery.  Petitioner’s convictions and sentences were affirmed on direct appeal.  
People v. Gholston
, 124 Ill. App. 3d 873, 464 N.E.2d 1179 (1984) (
Gholston
).   

Petitioner filed a 
pro
 
se
 post-conviction petition which was summarily dismissed.  On May 24, 1988, this court reversed the summary dismissal and remanded for further proceedings because the summary dismissal had not taken place within the statutorily requisite 30 days after the filing of the petition.  On remand, defendant moved successfully for DNA testing.  The test results were inconclusive due to the absence of sufficient semen from the Vitullo Kit to test.  

On December 15, 1998, defendant filed a supplemental petition for post-conviction relief alleging that his due process rights were violated because the forensic testing done at the time of trial had used all of the semen in the Vitullo Kit.  On May 7, 1999, a second supplemental petition was filed asking for an evidentiary hearing.  On July 30, 1999, the circuit court granted the State’s motion to dismiss the petition.

On appeal here, petitioner contends only that
 
his extended term sentences, which were based on the circuit court's finding that the offenses were accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty (Ill. Rev. Stat. 1979, ch. 38, sec. 1005-8-2 (now 730 ILCS 5/5-8-2 (West 2000)); Ill. Rev. Stat. 1979, ch. 38, sec. 1005-5-3.2(b)(2) (now 730 ILCS 5/5-3.2(b)(2) (West 2000))), violate the United States Supreme Court’s decision in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000) (
Apprendi
).     

Before reaching the merits of petitioner's 
Apprendi
 claim, it must be determined first whether 
Apprendi
 should be applied to cases on collateral review.  There has been disagreement among the divisions of the First District as to whether 
Apprendi
 should be applied retroactively to collateral proceedings.  See 
People v. Kizer
, 318 Ill. App. 3d 238, 741 N.E.2d 1103 (1st Dist., 1st Div. 2000) (
Kizer
) (holding that 
Apprendi
 does not apply retroactively); 
People v. Beachem
, 317 Ill. App. 3d 693, 740 N.E.2d 389 (1st Dist., 3d Div. 2000) (
Beachem
) (holding that 
Apprendi
 does apply retroactively).  Some members of the present panel of this division joining in this decision previously have adopted the reasoning of 
Beachem
 and have held that 
Apprendi
 applies retroactively to timely-filed initial post-conviction petitions.
(footnote: 1)  
The reasons set forth below form the bases of support for our decision to change course and follow 
Kizer
, and now conclude applying 
Apprendi
 retroactively to post-conviction proceedings is in error. 

First, as noted, disagreement continues among the Appellate Districts, as well as the divisions of the First District, as to whether 
Apprendi
 should be applied retroactively to collateral proceedings.
(footnote: 2)  
This unbalanced split among the divisions has created the unfair, unpredictable, unstable and undesirable situation in which the determination of whether a post-conviction petitioner’s
 
Apprendi
 claim will be considered rests entirely on chance, i.e., to which division the appeal is assigned randomly by computer.
(footnote: 3) 

Second, in 
People v. Flowers
, 138 Ill. 2d 218, 561 N.E.2d 674 (1990) (
Flowers
), the Illinois Supreme Court adopted the United States Supreme Court’s decision in 
Teague v. Lane
, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989) (
Teague
)
 holding that a new constitutional rule of criminal procedure is not applied retroactively to cases pending on collateral review unless the rule falls within one of two narrow exceptions. 
 Both the 
Beachem
 and 
Kizer
 lines of cases agree that 
Apprendi
 does not fall within the first 
Teague
 exception.
  
Kizer
, 318 Ill. App. 3d at 247; 
Beachem
, 317 Ill. App. 3d at 699.

The cases diverge, however, regarding the application of the second 
Teague
 exception, which provides 
that a new rule should be given retroactive application if it requires the observance of those procedures that are implicit in the concept of ordered liberty.  
Teague
, 489 U.S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1076
.  It is undisputed that this exception must be construed narrowly.  
Flowers
, 138 Ill. 2d at 242.  The exception encompasses only “watershed rules of criminal procedure” that are necessary to the fundamental fairness of a criminal proceeding and should be limited to those new rules without which the likelihood of an accurate conviction is seriously diminished.  
Teague
, 489 U.S. at 313, 103 L. Ed. 2d at 358, 109 S. Ct. at 1077.  It is not enough, however, to say that the new rule is aimed at improving the accuracy of trial.  “A rule that qualifies under this exception must not only improve accuracy, but also 'alter our understanding of the bedrock procedural elements’ essential to the fairness of a proceeding.”  
Sawyer v. Smith
, 497 U.S. 227, 242, 111 L. Ed. 2d 193, 211, 110 S. Ct. 2822, 2831 (1990) (
Sawyer
), quoting 
Teague
, 489 U.S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1076. 

Beachem
 found that 
Apprendi
 falls within the second 
Teague
 exception and applies retroactively to post-conviction proceedings, because the rights affirmed in 
Apprendi
 are “at the core of our criminal justice system.”  
Beachem
, 317 Ill. App. 3d at 700.  When a defendant is sentenced to an extended term, the facts that lead to an enhanced sentence become elements of the offense.  
Beachem
, 317 Ill. App. 3d at 701.  Therefore, when those enhancing factors are not charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt, a defendant sentenced to an extended term serves the prescribed statutory maximum sentence but “remains in prison on a charge never made and never proved.”  
Beachem
, 317 Ill. App. 3d at 702.  The court found that under such circumstances, the sentence violates 
the procedures implicit in the concept of ordered liberty
.  
Beachem
, 317 Ill. App. 3d at 706.

In 
Kizer
, after considering our supreme court’s application of the second 
Teague
 exception in 
Flowers
, the appellate court held that 
Apprendi
 does not apply retroactively to cases on collateral review.  In 
Flowers
, 
our supreme court 
declined to apply its decision in 
People v. Reddick
, 123 Ill. 2d 184, 526 N.E.2d 141 (1988) (
Reddick
) (ruling that the jury instructions regarding the elements of murder and voluntary manslaughter were unconstitutional when given together because they misallocated the burden of proof, effectively precluding the jury from returning a verdict of voluntary manslaughter rather than murder), to cases pending on collateral review.  Although proper instructions are essential to a fair trial, the 
Reddick
 rule was held not to fall within the second 
Teague
 exception because it did not establish “such a component of basic due process as to fall within it.”  
Flowers
, 138 Ill. 2d at 242. 

The 
Kizer
 court noted that, although the 
Flowers
 court recognized 
Reddick
's change in the law with regard to the burden of proof and the elements of the offense of voluntary manslaughter, nevertheless, 
Reddick
 was not applicable to cases pending on collateral review, indicating how narrowly our supreme court interprets the second 
Teague
 exception.  The 
Kizer
 court concluded that the 
Reddick
 decision implicated the right to a jury verdict beyond a reasonable doubt because the instructions tendered to the jury misstated the appropriate burden of proof.  
Kizer
, 318 Ill. App. 3d at 251.  The court explained:  

“The burden of proof problem in 
Reddick
 exposed defendant to the danger of deprivations just as unfair as any deriving from the 
Apprendi
 problem.  In 
Apprendi
 the Court was concerned that the defendant was being sentenced to what amounted to a greater crime rather than a lesser one on the basis of a factor found by merely a preponderance of the evidence rather than beyond a reasonable doubt. [Citation.] In 
Reddick
, however, the court found that the instructions made it not just less likely, as the lower standard of proof made it in 
Apprendi
, but 
impossible
 for a finder of fact following the burden of proof instructions to find the defendant guilty of the lesser crime rather than the greater crime.”  
Kizer
, 318 Ill. App. 3d at 252.  

Because the rules announced in both 
Reddick
 and 
Apprendi
 involved the right to a jury verdict beyond a reasonable doubt and the supreme court determined that the 
Reddick
 rule did not fall within the second 
Teague
 exception, the 
Kizer
 court concluded that the rule announced in 
Apprendi
 did not fall within the second 
Teague
 exception.

Third, the 
Kizer
 court noted that the second 
Teague
 exception must be narrowly construed so as to recognize that “application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system.”  
Kizer
, 318 Ill. App. 3d at 248, quoting 
Teague
, 489 U.S. at 309, 103 L. Ed. 2d at 355, 109 S. Ct. at 1074. 

Significantly, as the courts in 
Beachem
 and 
McGee
 have noted, 
neither the United States Supreme Court nor the Illinois Supreme Court has ever found that a new rule qualifies for retroactivity under the second 
Teague
 exception.  317 Ill. App. 3d at 702 n.4; 328 Ill. App. 3d at 934; see also 
Sanders
, 247 F.3d at 148.  The Supreme Court repeatedly has pointed to 
Gideon v. Wainwright
, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963) (
Gideon
) as an example of a watershed rule of criminal procedure which "'alter[s] our understanding of the bedrock elements essential to the fairness of a proceeding.'"  
Sanders
, 247 F.3d at 151, quoting 
Sawyer
, 497 U.S. at 242, 111 L. Ed. 2d at 211, 110 S. Ct. at 2831.  In an unpublished opinion,
(footnote: 4) the Sixth Circuit of the United States Court of Appeals construed 
Gideon
 and 
Apprendi
 in context of the second 
Teague
 exception, noting that "the accuracy that is improved by the 
Apprendi
 requirement is the better imposition of a proper sentence.  In contrast, the accuracy that is improved by the rule of 
Gideon
 involves the basic determination of the defendant's guilt or innocence.  By requiring that all defendants being charged with a serious crime are represented by counsel, 
Gideon
 protects the innocent from conviction.  
Apprendi
 merely limits the potential penalty to be imposed on a defendant."  
Goode v. United States
, No. 01-1340, slip op. at 5 (6th Cir. May 10, 2002). 

The United States Supreme Court has refused to apply 
Teague
 retroactively to its findings in 
Batson v. Kentucky
, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986) (
Batson
) and other cases related to the rule established in 
Gideon
.  See 
Moss
, 252 F.3d at 993 (noting that "
Apprendi
 appears no more 'important' to a fair trial than rules previously addressed by the Court in 
Batson
 ***"); 
Perry v. Leeke
, 488 U.S. 272, 102 L. Ed. 2d 624, 109 S. Ct. 594 (1989) (whether a district court's order that a defendant not speak with his counsel during a court recess violated his Sixth Amendment right to the assistance of counsel was not applied retroactively under 
Teague
); 
Nichols v. United States
, 511 U.S. 738, 128 L. Ed. 2d 745, 114 S. Ct. 1921 (1994) (whether the Sixth Amendment prohibits a sentencing court from considering a defendant's previous uncounseled misdemeanor conviction in sentencing him for a subsequent offense was not applied retroactively under 
Teague
); 
Smith v. Robbins
, 528 U.S. 259, 145 L. Ed. 2d 756, 120 S. Ct. 746 (2000) (whether a state procedure that permits appointed counsel to withdraw without informing the court that the appeal would be frivolous violates the indigent defendant's right to appellate counsel was not applied retroactively under 
Teague
).  The Fourth Circuit of the United States Court of Appeals noted that application of retroactivity to these cases "would nullify 
Teague's
 admonition that retroactive application of new constitutional rules on collateral review is reserved only for truly exceptional cases."  
Sanders
, 247 F.3d at 151.

The 
Sanders
 court also recognized that a rule which merely shifts the factfinding duties from an impartial judge to a jury clearly does not fall within the scope of the second 
Teague
 exception.  247 F.3d at 148; see also 
Neder v. United States
, 527 U.S. 1, 144 L. Ed. 2d 35, 119 S. Ct. 1827 (1999) (holding that a district court's failure to submit a finding of materiality to the jury was harmless error).  The court further noted that, "[c]ertainly, if having a judge rather than a jury consider an element of the offense amounts only to harmless error, then a new rule mandating a jury to decide an issue rather than a judge cannot fall within the scope of the second 
Teague
 exception."  
Sanders
, 247 F.3d at 149.  The Second Circuit of the United States Court of Appeals, in 
Bilzerian v. United States
, 127 F.3d 237, 241 (2d Cir. 1997),
 recognized that the Supreme Court in 
United States v. Gaudin
, 515 U.S. 506, 132 L. Ed. 2d 444, 115 S. Ct. 2310 (1995) "merely shift[ed] the determination of materiality from the judge to the jury" and there is "little reason to believe that juries will have substantially different interpretations of materiality than judges." 

The same reasoning applies in the instant case; there is little reason to believe that a jury would have had a substantially different interpretation of the brutal and heinous nature of the crimes committed than the circuit judge.  As many federal and state courts have recognized, it is possible for a criminal defendant to have had a fair and accurate trial without the new procedural protection offered by 
Apprendi
. 

In the present case, petitioner seeks review of a sentence imposed 21 years ago.  Due to the significant time that has passed since petitioner’s conviction and sentencing, to order a new sentencing hearing now would place an unfair, if not impossible, burden on the factfinder and on the administration of justice.  A new sentencing hearing would require the factfinder to seek out such 21-year-old evidence as may still be found, re-evaluate any such  evidence out of context of time and circumstances, as well as any evidence which may not be found, and conclude within a new milieu what a previous factfinder already has considered, all in order to tag the subject conduct as brutal and heinous.  As the Supreme Court noted in 
Teague
, the costs imposed upon the States by retroactive application of new rules of constitutional law generally far outweigh the benefits of such application, which "continually forces the States to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards."  
Teague
, 489 U.S. at 310, 103 L. Ed. 2d at 355, 109 S. Ct. at 1075.

Fourth, during the 21 years since his conviction and sentencing, petitioner has utilized just about every avenue provided by the criminal justice system to the fullest extent.  He challenged his conviction and sentences on direct appeal.  The summary dismissal of his 
pro
 
se
 post-conviction petition was reversed.  On remand, counsel was appointed and petitioner was granted DNA testing.  Counsel then filed two supplemental post-conviction petitions, which were considered by the circuit court.  As fundamental justice requires, petitioner was afforded every opportunity to refute the charges against him and controvert the State’s proof; clearly, no due process violation has occurred.  See 
People v. Melock
, 149 Ill. 2d 423, 465, 599 N.E.2d 941 (1992); 
People v. Harlacher
, 262 Ill. App. 3d 1, 6, 634 N.E.2d 366 (1994).

Fifth, the United States Supreme Court recently has shed some light on its own approach to the application of 
Apprendi
.  In 
United States v. Cotton
, ___ U.S. ___, ___ L. Ed. 2d ___, 122 S. Ct. 1781 (2002) (
Cotton
), the Court considered whether the omission from a federal indictment of a fact that enhances the statutory maximum sentence justifies a court of appeal's vacatur of the enhanced sentence, although defendant did not object in the district court.  The Supreme Court applied the plain-error test of Federal Rule of Criminal Procedure 52(b) to defendant’s forfeited claim.  "Under that test, before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' [Citation.]  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.”  
Johnson v. United States
, 520 U.S. 461, 466-67, 137 L. Ed. 2d 718, 727, 117 S. Ct. 1544, 1549 (1997) (
Johnson
), quoting 
United States v. Olano
, 507 U.S. 725, 732, 123 L. Ed. 2d 508, 518, 113 S. Ct. 1770, 1776 (1993).  The Supreme Court noted the indictment’s failure to allege a fact, drug quantity, that increased the statutory maximum sentence, rendered defendant’s enhanced sentences erroneous under 
Apprendi
 and that the error was plain, but found it unnecessary to determine whether defendant satisfied the third element of the plain-error inquiry.  This was so, the Supreme Court held, because, assuming that defendant's  substantial rights were affected, the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings, where based on the evidence.  The Supreme Court asserted, “[s]urely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base.”  
Cotton
, ___ U.S. at ___, ___ L. Ed. 2d at ___, 122 S. Ct. at 1786.

As the Supreme Court found in 
Cotton
, and based on the facts in the present case, surely no reasonable and rational jury, having found that petitioner was guilty beyond a reasonable doubt, would have found 
that these crimes were anything other than brutal and heinous.  The  victims in this case were brutally attacked as they stood waiting for an “el” train on the platform.  The two male victims were beaten and robbed.  Their 15-year-old female companion was pushed down onto the platform and repeatedly gang raped and forced to commit deviate sexual acts by at least five men, including petitioner.  As one defendant would rape her, another would forcibly insert his penis into her mouth.  Several defendants placed their hands around the victim's neck and choked her during intercourse.  As the last defendant finished raping her, the victim begged him not to kill or hurt her; nevertheless, before he stood up, he hit the girl in the face very hard.  
Gholston
, 124 Ill. App. 3d at 880.  The foregoing facts were presented to the jury at the time of trial, which found defendant guilty.  Recognizing the difficulty in determining brutality and heinousness from fact situation to fact situation, insofar as the stability and foreseeability aspects of punishment may be involved, it is contrary to human experience and reason that the conduct involved in this case should be placed into the technical reservoir of requiring a new sentencing hearing solely for the purpose of attaching a label of "brutal and heinous" to the conclusion earlier reached by the factfinder.  Surely these facts would be recognized by any rational and reasonable person as requiring an enhanced sentence.
(footnote: 5)  
The facts of this case demonstrate the inappropriateness of applying 
Apprendi
 retroactively to cases on collateral review.  

On this record there is no basis for concluding that any error seriously affected the fairness, integrity or public reputation of the judicial proceedings.  Indeed, it would be the vacatur of petitioner’s sentence that would have such an effect.  Prisoners should not be misled into believing that every sentencing issue, already substantially decided a generation ago by previous factfinders, can be altered through some magic door such as 
Apprendi
.  
Talbott v. Indiana
, 226 F.3d 866, 869 (7th Cir. 2000).  As the Supreme Court noted in 
Cotton
, “the fairness and integrity of the criminal justice system depends on meting out to those inflicting the greatest harm on society the most severe punishments.”  
Cotton
, ___ U.S. at ___, ___ L. Ed. at ___, 122 S. Ct. at 1787.  "'Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.'"  
Johnson
, 520 U.S. at 470, 137 L. Ed. 2d at 729, 117 S. Ct. at 1550,  quoting R. Traynor, The Riddle of Harmless Error 50 (1970).  

The facts of this case demonstrate the futility of attempting to secure fairness and justice by applying hyper-technical concepts to such cases and the inappropriateness of applying 
Apprendi
 retroactively to cases on collateral review.  Therefore, we adopt the reasoning of 
Kizer
, and find that 
Apprendi
 does not retroactively apply to cases on collateral review.  Consequently, the merits of petitioner’s 
Apprendi
 claim need not be addressed. 

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County dismissing petitioner’s post-conviction petition is affirmed and petitioner’s extended term sentences are affirmed. 

Affirmed.

HOFFMAN, P.J. and KARNEZIS, J., concur.    

FOOTNOTES
1:
Among these cases are 
People v. Pendleton
, Nos. 1-99-4021, 1-00-1154 (Aug. 20, 2001) (unpublished order under Supreme Court Rule 23); 
People v. Quinones
, No. 1-99-1270 (Aug. 30, 2001) (unpublished order under Supreme Court Rule 23); 
People v. Wilkins
, No. 1-01-0536 (March 21, 2002) (unpublished order under Supreme Court Rule 23); 
People v. Smith
, No. 1-00-2967 (March 21, 2002) (unpublished order under Supreme Court Rule 23); 
People v. Anderson
, No. 1-01-3387 (May 16, 2002) (unpublished order under Supreme Court Rule 23); 
People v. Kern
, No. 1-00-2944 (March 21, 2002) (unpublished order under Supreme Court Rule 23).  

2:
The third division of the First District and the Third and Fifth Districts follow 
Beachem
 and hold that 
Apprendi
 applies retroactively to timely-filed post-conviction petitions.  
People v. Lee
, 326 Ill. App. 3d 882, 762 N.E.2d 18 (3d Dist. 2001), 
appeal
 
allowed
 198 Ill. 2d 625, ___ N.E.2d ___ (2002); 
People v. Rush
, 322 Ill. App. 3d 1014, 757 N.E.2d 88 (5th Dist. 2001); 
People v. Johnston
, 327 Ill. App. 3d 385, 763 N.E.2d 410 (5th Dist. 2002)
; 
People v. Kidd
, 327 Ill. App. 3d 973, 765 N.E.2d 488 (1st Dist., 3d Div.  2002);
 
People v. Fields
,  No. 1-00-0287 (1st Dist., 3d Div. January 30, 2002)
; 
Beachem
, 317 Ill. App. 3d at 706.  
The Second and Fourth Districts and those remaining divisions of the First District that have addressed this issue follow 
Kizer
 and hold that 
Apprendi
 does not apply retroactively to post-conviction proceedings.  
People v. Wright
, Nos. 2-00-0670, 2-01-0190 (2d Dist. May 8, 2002); 
People v. McGee
, 328 Ill. App. 3d 930, ___ N.E.2d ___ (2d Dist. 2002) (
McGee
); 
People v. Helton
, 321 Ill. App. 3d 420, 749 N.E.2d 1007 (4th Dist. 2001)
.  
People v. Stewart
, 326 Ill. App. 3d 933, 762 N.E.2d 604 (1st Dist., 2d Div. 2001); 
People v. Scullark
, 325 Ill. App. 3d 876, 759 N.E.2d 565 (1st Dist., 2d Div. 2001); 
People v. Montgomery
, 327 Ill. App. 3d 180, 763 N.E.2d 369 (1st Dist., 6th Div. 2001); 
People v. Rovito
, 327 Ill. App. 3d 164, 762 N.E.2d 641 (1st Dist., 6th Div. 2001); 
People v. Coulter
, 321 Ill. App. 3d 644, 748 N.E.2d 240 (1st Dist., 5th Div. 2001)
; 
Kizer
, 318 Ill. App. 3d at 252. 
 

Further, every Federal Circuit Court of Appeals that has considered the issue has found that 
Apprendi
 does not apply retroactively to collateral proceedings.  See
, e.g., 
McCoy
 v. 
United States
, 266 F.3d 1245, 1258 (11th Cir. 2001)
; 
United States v. Sanders
, 247 F.3d 139, 146 (4th Cir. 2001) (
Sanders
); 
United States v. Moss
, 252 F.3d 993, 997 (8th Cir. 2001) (
Moss
); 
Jones v. Smith
, 231 F.3d 1227, 1236 (9th Cir. 2000); 
In re: Turner
, 267 F.3d 225, 231 (3d Cir. 2001) (second habeas corpus application); 
In re Clemmons
, 259 F.3d 489, 493 (6th Cir. 2001) (second habeas corpus application).

3:
The sheer numbers of these cases are significant, and the problem is exacerbated by the advent of some 173 reported opinions concerning 
Apprendi
 issues in Illinois alone.  In addition, some  144 cases are pending before Illinois reviewing courts addressing 
Apprendi
 issues, as of this writing.
  Not included in these figures are Supreme Court Rule 23, 
Finley
, 
Anders
 and summary orders.  

4:
Permissible for use in citation under 6th Cir. R.28(g).

5:
T
his finding is at odds with this division’s prior decision in 
People v. Bryant
, 325 Ill. App. 3d 448, 758 N.E.2d 430 (2001) (
Bryant
), rejecting the State’s argument that even though the sentencing court and not the trier of fact determined the offense to be exceptionally brutal and heinous, any error was harmless because a rational trier of fact would have reached the same conclusion beyond a reasonable doubt based on the evidence at trial.  When 
Bryant
 was decided we did not have the benefit of the Supreme Court’s decision in 
Cotton
. 

Further, as observed in 
Sanders
, "a rule which merely shifts the factfinding duties from an impartial judge to a jury clearly does not fall within the scope of the second 
Teague
 exception."  247 F.3d at 148.